1    **WO**

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9    United States of America,                )    CR-11-08074-PCT-JAT
                                               )
10            Plaintiff,                       )    **ORDER**
                                               )    **UNDER SEAL**
11   vs.                                       )
                                               )
12                                             )
     Jefferson Gatewood,                       )
13                                             )
              Defendant.                       )
14                                             )
                                               )
15   ───────────────────────────────────────  )

16         Pending before the Court is Defendant Jefferson Gatewood's Motion to Dismiss

17   Counts One and Two of the Superceding Indictment (Motion). (Doc. 137). Defendant is

18   charged in Counts I and II with sexually abusing a minor. Defendant was previously tried in

19   tribal court for sexually abusing this same minor. Defendant now argues that this re-

20   prosecution violates his Constitutional rights.

21         Specifically, Defendant argues that re-prosecution violates his Constitutional rights

22   because the Dual Sovereignty Doctrine, which allows two prosecutions for the same offense

23   by independent sovereigns,[1] violates the Double Jeopardy Clause of the Fifth Amendment.

24   In addition, Defendant argues that the *Bartkus*[2] exception to the Dual Sovereignty Doctrine

25   ────────────────────

26         [1] *See generally U. S. v. Wheeler*, 435 U.S. 313 (1978).

27         [2] *Bartkus v. People of State of Ill.*, 359 U.S. 121 (1959) (holding that an exception to
28   the Dual Sovereignty Doctrine exists when an initial prosecution is brought only as a tool or
     sham for subsequent federal prosecution).

1   applies here because of law enforcement and institutional collusion between the federal

2   government and the White Mountain Apache Tribe (Tribe). Defendant also requests an

3   evidentiary hearing at which Bureau of Indian Affairs (BIA) Special Agent Daniel Hawkins

4   and other witnesses can testify on the nature and extent of BIA assistance during the White

5   Mountain Apache Tribal Police investigations.

6          The Government has filed a response contending that the Tribe is a separate

7   sovereign, and that the actions of neither the federal government nor Special Agent Hawkins

8   is sufficient to satisfy the *Bartkus* exception to the Dual Sovereignty Doctrine. (Doc. 145).

9   Defendant has filed a reply in support of the Motion. (Doc. 150). The Court now rules on the

10  Motion and holds that the *Bartkus* exception does not bar re-prosecution by the federal

11  government. Defendant's request for an evidentiary hearing will be denied.

12

13  **I.      Legal Standard**

14         The Double Jeopardy Clause provides that no person shall "be subject for the same

15  offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double

16  Jeopardy Clause is not offended, however, when two sovereignties have denounced an act

17  as a crime and each can punish that crime. *United States v. Lanza*, 260 U.S. 377, 382 (1922)

18  (This principle, which generally allows two prosecutions for the same conduct, is the Dual

19  Sovereignty Doctrine). The relationship between states and the federal government is

20  considered analogous to that of tribal authorities and the federal government. *Wheeler*, 435

21  U.S. at 319. Generally, Indian tribes retain their "sovereign power to punish tribal offenders

22  . . . tribal exercise of that power today is therefore the continued exercise of retained tribal

23  sovereignty." *Id*. at 323-24.[3] But the Dual Sovereignty Doctrine does not always apply when

24

25         [3] The threshold question for determining tribal sovereignty is whether the source of
26  power to punish crimes falls within "inherent tribal sovereignty, or an aspect of the
    sovereignty of the Federal Government which has been delegated to the tribes by
27  Congress[.]" *Wheeler*, 435 U.S. at 322. It is well-established that Indian tribes retain the right
    to internal self-government, having the "power to enforce their criminal laws against tribe
28  members." *Id*.

1 successive cases are prosecuted by tribal and federal entities.

2       For a Double Jeopardy claim to be colorable, "it must have some possible validity."

3 *Lanza*, 260 U.S. at 382 (internal quotations omitted). While the Supreme Court recognizes

4 that cooperation between prosecutors and sovereign authorities is conventional practice,

5 consecutive prosecutions might be barred by the Double Jeopardy Clause where federal

6 authorities commandeer another sovereign's prosecutorial machinery, turning its prosecution

7 into "a sham and a cover for a federal prosecution," and essentially making it "another

8 federal prosecution." *Bartkus*, 359 U.S. at 123-24. Importantly, *Bartkus* does not prohibit

9 "very close coordination in the prosecutions, in the employment of agents of one sovereign

10 to help the other sovereign in its prosecution, and in the timing of the court proceedings so

11 that the maximum assistance is mutually rendered by the sovereigns. . . . No constitutional

12 barrier exists to this norm of cooperative effort." *United States v. Figueroa-Soto*, 938 F.2d

13 1015, 1020 (9th Cir. 1991) (internal citations omitted); *see also United States v. Bernhardt*,

14 831 F.2d 181, 182 (9th Cir. 1987) ("It is clear that the *Bartkus* exception does not bar

15 cooperation between prosecuting sovereignties.").

16       Finally, an evidentiary hearing may be granted at the discretion of the district court

17 when the factual record is unclear or does not support dismissal on double jeopardy grounds

18 and a hearing would "aid in the factfinding process." *Bernhardt*, 831 F.2d at 183. To obtain

19 an evidentiary hearing to aid in the factfinding process, "evidence of undue coercion or

20 collusion by federal authorities" must be presented. *U.S. v. Zone*, 403 F.3d 1101, 1106 (9th

21 Cir. 2005). To qualify for an evidentiary hearing, a defendant must, at the very least, "make

22 more than 'conclusory allegations' of collusion." *United States v. Koon*, 34 F.3d 1416, 1439

23 (9th Cir. 1994) (citing *United States v. Russotti*, 717 F.2d 27, 31 (2d Cir. 1983)).

24

25 **II.    Analysis**

26       Defendant begins by arguing that successive prosecutions for the same conduct violate

27 the Double Jeopardy Clause. The Court finds, however, that successive prosecutions are

28 permissible, in certain circumstances, under the Dual Sovereignty Doctrine. Thus, the Court

1    will first consider whether the Tribe and the federal government are dual sovereigns.

2    Defendant argues that because the Tribe receives federal funding, regulatory oversight, and

3    law enforcement assistance from the BIA, "it no longer makes sense to maintain the fiction

4    that federal and tribal governments are so separate in their interests that the dual sovereignty

5    doctrine is universally needed to protect one from the other." (Doc. 137 at 7). Defendant

6    further contends that this cooperation transforms the Tribe from a "dependant sovereign

7    power" into a "political subdivision" of the federal government. *Id.* at 6.

8        Although the financial and regulatory relationship between tribal authorities and the

9    federal government may be significant, this mutual cooperation does not create a "de facto

10   divestiture of tribal sovereignty" or rise to the level of collusion necessary to meet the

11   *Bartkus* exception. The burden of establishing sufficient federal manipulation or control is

12   "substantial; the [defendant] must demonstrate that the state officials had little or no

13   independent volition in the state proceedings." *Zone*, 403 F.3d at 1105 (quoting *United States*

14   *v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976)). Here, the central funding and pooling of

15   investigatory power is not unique. As the Government notably argues, cooperation between

16   the Tribe and the federal government "does not subject tribal law enforcement to BIA's chain

17   of command in day-to-day investigations of criminal cases." (Doc. 145 at 3). The Tribe

18   continues to operate independently of the federal government and remains its own separate

19   sovereign despite Defendant's contention that "the current evolution of the institutional

20   relationship between the federal government" and the Tribe has eliminated the issue of dual

21   sovereignty and created one central government entity. (Doc. 150 at 3). Additionally, the

22   Tribe's power to prosecute crimes committed by and against its own tribe members falls

23   within its inherent tribal sovereignty. *Wheeler*, 435 U.S. at 328. The Ninth Circuit Court of

24   Appeals has affirmed a conviction for sexual abuse of a minor in a case prosecuted by both

25   a tribal authority and the federal government. *See, e.g.*, *United States v. Tsinnijinnie*, 91 F.3d

26   1285 (9th Cir. 1996) (Navajo defendant's conviction for sexually abusing a minor upheld in

27   federal court after defendant pled guilty in tribal court for engaging in the same conduct).

28       Based on the foregoing, the Court concludes that the Tribe and the federal government

1  are dual sovereigns. Thus, successive prosecutions are generally permissible under the Dual

2  Sovereignty Doctrine. However, as discussed above, under the *Bartkus* exception, successive

3  prosecutions, even by independent sovereigns, can violate the Double Jeopardy Clause when

4  one prosecution is a sham or cover for the other prosecution. Accordingly, the Court will next

5  consider whether the *Bartkus* exception applies on the facts of this case.

6      Cooperation between a tribal entity and the federal government does not automatically

7  make one a "tool" of the other. *See generally Figueroa-Soto*, 938 F.2d 1015. Defendant

8  claims that "the tribal court trial allowed Special Agent Hawkins to obtain sworn evidence

9  from the defendant that could later be used to incriminate him in the federal case. As a

10  consequence, this tribal prosecution was a 'sham' and 'cover' in that it was an attempt to use

11  the defendant's tribal court sworn testimony to bolster the pending federal prosecution."

12  (Doc. 137 at 5). But "the Double Jeopardy Clause does not prevent federal prosecutors from

13  . . . taking advantage of the evidentiary record developed in connection with a defendant's

14  previous state conviction." *Zone*, 403 F.3d at 1104.

15      Additionally, nothing in Defendant's request for an evidentiary hearing impacts the

16  Court's Double Jeopardy analysis. Notably, Defendant fails to identify, with adequate

17  specificity, evidence of undue coercion or collusion and instead makes only "conclusory

18  allegations." (Doc. 137 at 2). The closest Defendant comes to providing such specific

19  evidence of collusion is found in a statement made by Tribal Court Presiding Chief Judge

20  Lewis, which was that "Criminal Investigator Dan Hawkins played a major role in the case."

21  (Doc. 150-1 at 8). However, Agent Hawkins was never even called to the stand in the tribal

22  court case, which belies any assertion that the federal government and federal agents were

23  controlling the tribal prosecution.

24      Defendant also claims that "Agent Hawkins assisted the White Mountain Apache

25  Tribal Prosecutor John Major in securing information about the case," citing activities by

26  Agent Hawkins such as faxing Defendant's criminal history to the White Mountain Apache

27  Tribal Prosecutor's Office and his presence at nearly all investigation and interviews after

28  being notified of the allegations. (Doc. 137 at 2). Mere assistance and the sharing of records,

1  however, is insufficient proof of manipulation or undue coercion by federal authorities. Since

2  Defendant has not provided the Court with specific allegations of coercion or collusion that

3  would justify an evidentiary hearing, Defendant's request for a hearing is denied.

4       This Court therefore finds that the Tribe is a sovereign entity and that successive

5  prosecutions in tribal court and federal court are permissible under the Dual Sovereignty

6  Doctrine. Further, the Court finds that this case does not fall within the *Bartkus* exception to

7  the Dual Sovereignty Doctrine, thus, this federal prosecution does not violate the Double

8  Jeopardy Clause. Defendant's Motion to Dismiss Counts One and Two is denied.

9

10  **III.   CONCLUSION**

11       Accordingly,

12       **IT IS ORDERED** that Defendant's Motion to Dismiss Counts One and Two (Doc.

13  139) is denied.

14       **IT IS FURTHER ORDERED** that Defendant's request for an evidentiary hearing

15  (Doc. 139) is denied.

16       **IT IS FINALLY ORDERED** that the Court has issued this Order under seal out of

17  an abundance of caution because the Motion was filed under seal. However, the Court does

18  not believe this Order needs to be sealed. Thus, within 10 days the Government shall file

19  either a motion to unseal this Order or a motion to maintain it under seal stating the reasons

20  why the Order should be sealed.

21       DATED this 18th day of June, 2012.

22

23

24                           James A. Teilborg

25                          United States District Judge

26  **COPIES TO ONLY**

27  Counsel for the Government and Counsel for Defendant

28