**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-08074-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | **UNDER SEAL** |
| Jefferson Gatewood, | |
| Defendant. | |

Pending before the Court are three motions by the Defendant.  These motions include Defendant's Motion to Dismiss Counts 3-23 (Doc. 215), Defendant's Motion to Sever Counts (Doc. 223), and Defendant's Second Motion to Exclude Evidence (Doc. 225).  The government has filed Responses to each motion.  (Docs. 261, 249, and 263).  The Defendant has also filed a Reply to each Response.  (Docs. 278, 275, and 292).  The Court now rules on each motion and denies all three of Defendant's motions.

I.      **DEFENDANT'S MOTION TO DISMISS COUNTS 3-23 (Doc. 215)**

The Court denies Defendant's Motion to Dismiss Counts 3-23 because Defendant has not shown he suffers from actual prejudice for due process purposes.  Nor has Defendant shown that the government's reasons for pre-indictment delay offend those fundamental conceptions of justice which lie at the base of our civil and political institutions.

A.      **Background**

Defendant asks the Court to dismiss Counts 3-23 of the Second Superseding Indictment filed on May 8, 2012 (Doc. 184).  (Doc. 215 at 9).  The part of this Second Superseding Indictment at issue includes eight different victims (Jane Does 2-9), alleging twenty-one charges (counts 3-23), that occurred over a time period ranging from 1992—2009.  Defendant argues these twenty-one counts should be dismissed because the government has violated his rights under the Due Process Clause of the Fifth Amendment by waiting until 2012 to bring an indictment.  (*Id.*)  Consequently, the issue before the Court is whether the time period between the alleged crimes and the charges for those crimes, the twenty-one years from 1992 until 2012, is an unconstitutional pre-indictment delay.

### B.    Relationship between Statute of Limitations and Due Process Clause

The United States Supreme Court has found that "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges."  *United States v. Marion*, 404 U.S. 307, 322 (1971) (citation omitted).  A statute of limitations provides a predictable, legislatively enacted limit on prosecutorial delay.  *United States v. Lovasco*, 431 U.S. 783, 789 (1977).  "Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may (during the limitation) . . . have lost their means of defence."  *Marion*, 404 U.S. at 322.  "But [the Supreme Court] did acknowledge that the statute of limitations does not fully define (defendants') rights with respect to the events occurring prior to indictment, and that the Due Process Clause has a limited role to play in protecting against oppressive delay."  *Lovasco*, 431 U.S. at 789.  The Due Process Clause of "[t]he Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay."  *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989).

Defendant's motion implicates the relationship between the statute of limitations and the Due Process Clause and raises the issue of what role the Due Process Clause

plays when there is no statute of limitations for the crimes alleged.  When no statute of limitations exists there is no "legislatively enacted *limit*."  Accordingly, can a nonexistent limit still provide the "*primary* guarantee against bringing overly stale criminal charges?"  In this situation does the Due Process Clause still only play a "limited role . . . in protecting against oppressive delay?"  Or, does the Due Process Clause then provide the primary and consequently only protection against pre-indictment delay when no statute of limitations exists?

### C.     Due Process Protection Against Pre-Indictment Delay

In this case, the Due Process Clause provides the only protection against an unconstitutional delay because no statute of limitations appears to exist for the charges at issue.[1]  Consequently, a closer look at how the Due Process Clause protects against a pre-

---

[1] In counts 3-23 Defendant is charged with multiple counts of five crimes:
1. Aggravated sexual abuse with children (18 U.S.C. § 2241(c)) in counts 3, 4, 5, 10, 12, 13 and 15;
2. Abusive sexual contact involving young children (18 U.S.C. § 2244(a)(1) and (c)) in count 6 and 16;
3. Aggravated sexual abuse by force or threat (18 U.S.C. § 2241(a)) in counts 7, 9, 11, 14, 17, 19, 20 and 22;
4. Sexual abuse of a minor (18 U.S.C. § 2243(a)) in count 8; and
5. Kidnapping (18 U.S.C. § 1201(a)) in counts 18, 21, and 23.

There is no statute of limitations for counts 3-22.  *See* 18 U.S.C. § 3299 (Under the Adam Walsh Child Protection and Safety Act of 2006, codified in part in § 3299, there is no statute of limitations for any offense under § 1201(a) involving a minor victim and any felony charge under Chapter 109A, which includes §§ 2241, 2243, and 2244); *see also* 18 U.S.C. § 3283 (no statute of limitations for an offense involving sexual abuse or kidnaping of a child under the age of eighteen years for the life of the child or for ten years after the offense, whichever is longer).

For count 23, the kidnapping of Jane Doe 9 (18 U.S.C. § 1201(a)), it appears there is a statute of limitations of five years.  Defendant, however, has not raised this issue and the government has not been given a chance to respond.  Accordingly, this Court will not address whether the statute of limitations for this charge bars indictment at this time.

The government alleges Jane Doe 9 was kidnapped between "November 1, 2000 and November 30, 2000."  (Doc. 184 at 9).  The government does not say in the indictment what age Jane Doe 9 was at the time of this alleged crime.  The government then says in its Response to this motion that "Jane Doe 9 was 20 years old in approximately 2000" when the alleged crime was committed.  (Doc. 261 at 8).  This would make Jane Doe 9 an adult when the government alleges Defendant kidnapped her.  Therefore neither §§ 3299 nor 3283 give the government an unlimited statute of limitations.  Since 1994, a violation of § 1201 has been a capital offense and had no statute of limitations when the kidnapping results in the loss of life.  *See United States v. Seale*, 130 S.Ct. 12 (2009) (Stevens, J., dissenting) (mem.).  When, however, a violation of § 1201 involves neither the loss of life nor a minor victim, then 18 U.S.C. § 3282 appears to apply and kidnapping has a five year statute of limitations.

1   indictment delay is warranted.

2   "The Supreme Court has cautioned against the wholesale importation of common

3   law and evidentiary rules into the Due Process Clause of the Constitution." *United States*

4   *v. Lemay*, 260 F.3d 1018, 1024-1025 (9th Cir. 2001). The Supreme Court has explained

5   that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process

6   Clause has limited operation. We, therefore, have defined the category of infractions that

7   violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342,

8   352 (1990). In *Lovasco* the Supreme Court considered the significance of a lengthy pre-

9   indictment delay by the government for constitutional purposes of fundamental fairness.

10  The government delayed indicting the defendant in *Lovasco*, in the hope other evidence

11  might be discovered to strengthen its case. 431 U.S. at 790. In upholding the District

12  Court's dismissal of the indictment for an unconstitutional delay, the Court of Appeals

13  found the government's hope did not justify the delay and it was a violation of

14  fundamental fairness. *Id*. But the Supreme Court reversed, and held "the Due Process

15  Clause does not permit courts to abort criminal prosecutions simply because they

16  disagree with a prosecutor's judgment as to when to seek an indictment." *Id*. "Judges are

17  not free, in defining 'due process,' to impose on law enforcement officials our 'personal

18  and private notions' of fairness and to 'disregard the limits that bind judges in their

19  judicial function.'" *Id*. (quoting *Rochin v. California*, 342 U.S. 165, 170 (1952)). Rather,

20  the Supreme Court explained, "[o]ur task is more circumscribed. We are to determine

21  only whether the action complained of . . . violates those fundamental conceptions of

22  justice which lie at the base of our civil and political institutions, and which define the

23  community's sense of fair play and decency." *Id*. (citations omitted).

24  The Supreme Court continued to thoroughly examine the policy reasons for not

25  requiring, as a constitutional mandate, that a prosecutor bring charges as soon as probable

26  cause has been established. The Supreme Court rejected the argument that the

27  government is constitutionally required to file prompt charges once it has assembled

28  sufficient evidence to prove guilt beyond a reasonable doubt. *Id*. at 791–92. Several

reasons were identified for allowing considerable latitude in the timing of commencement of prosecution:

> First, compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

> Second, insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions. The determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions . . . . Even if a prosecutor concluded that the case was weak and further investigation appropriate, he would have no assurance that a reviewing court would agree. To avoid the risk that a subsequent indictment would be dismissed for preindictment delay, the prosecutor might feel constrained to file premature charges, with all the disadvantages that would entail.

> Finally, requiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before

> deciding whether to seek an indictment . . . . Requiring
> prosecution once the evidence of guilt is clear [ ] could
> prevent a prosecutor from awaiting the information necessary
> for such a decision.

*Id*. at 792–95 (footnotes omitted).

The Supreme Court concluded:

> We would be most reluctant to adopt a rule which
> would have these consequences absent a clear constitutional
> command to do so. We can find no such command in the
> Due Process Clause of the Fifth Amendment. In our view,
> investigative delay is fundamentally unlike delay undertaken
> by the Government solely "to gain tactical advantage over the
> accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct.,
> at 465, precisely because investigative delay is not so one-
> sided. Rather than deviating from elementary standards of
> "fair play and decency," a prosecutor abides by them if he
> refuses to seek indictments until he is completely satisfied
> that he should prosecute and will be able promptly to
> establish guilt beyond a reasonable doubt. Penalizing
> prosecutors who defer action for these reasons would
> subordinate the goal of "orderly expedition" to that of "mere
> speed." *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991,
> 997 (1959). This the Due Process Clause does not require.

*Id*. at 795–96 (footnote omitted). Thus, "to prosecute a defendant following investigative

delay does not deprive him of due process, even if his defense might have been somewhat

prejudiced by the lapse of time." *Id*. at 796. It is not enough for the defendant to show

that the prosecution could have proceeded more rapidly or that there was some period of

delay in which no additional investigation was taking place. *See United States v. Walker*,

601 F.2d 1051, 1056 (9th Cir. 1979). To establish that a pre-indictment delay violates the

Due Process Clause, a defendant must prove: (1) that he suffered "actual, non-speculative

prejudice from the delay," and (2) that "the delay, when balanced against the

prosecution's reasons for it, offends those 'fundamental conceptions of justice which lie

at the base of our civil and political institutions.'" *Sherlock*, 962 F.2d at 1353-54

1  (quoting *Lovasco*, 431 U.S. at 789).

2  **1.  Actual Prejudice**

3  The initial issue before the Court is deciding whether Defendant suffers from

4  "actual prejudice" for due process purposes as defined by the Supreme Court and Ninth

5  Circuit.  "The defendant has a heavy burden to prove that a pre-indictment delay has

6  caused actual prejudice: the proof must be definite and not speculative, and the defendant

7  must demonstrate how the loss of a witness and/or evidence is prejudicial to his case."

8  *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) (citation omitted).  The Court

9  must determine what is speculation and what is proof of actual prejudice to the

10  Defendant.

11  The Court recognizes the inordinate amount of time at issue in this case and the

12  inherent prejudice potentially suffered by Defendant in being accused of crimes that

13  allegedly occurred up to twenty years ago.  Memories of the time period for the dates in

14  question possibly fade, both for witnesses and Defendant himself.  Potential witnesses

15  and evidence could be lost to the passage of time.  The challenges would appear to

16  significantly increase in defending oneself against charges decades old.  Defendant,

17  however, has raised none of these significant challenges.  Precedent requires Defendant

18  to proffer actual and provable prejudice due to something being lost to the passage of

19  time, not merely speculative prejudice on how strong the opposition's case is no matter

20  how conceivable the speculation appears.

21  Defendant claims that he is actually prejudiced because the government's delay

22  has created a de facto tactical advantage for the prosecution.  (Doc. 215 at 7).  Defendant

23  alleges this tactical advantage is manifested by his inability to effectively conduct cross-

24  examination and manage his own contemporaneous investigations into the nine victims'

25  claims against him in the Second Superseding Indictment.  (*Id*. at 8).  It appears to the

26  Court from Defendant's motion that this allegation stems from the fact that in

27  Defendant's opinion there are just too many other potential victims for him to effectively

28  defend against at once.

1    Defendant asks the Court to create a new test to determine that Due Process has

2    been violated if his case does not meet the requirements for actual prejudice.  (*Id*.)  In the

3    absence of actual prejudice, Defendant believes his situation is patently unfair and still

4    exhibits a violation of those fundamental conceptions of justice which lie at the base of

5    the civil and political institutions that define our community's sense of fair play and

6    decency.  (*Id*.)  This is something the Court is unwilling to do in this case because

7    Defendant has given the Court nothing beyond conclusory statements that his situation is

8    simply unfair.  (*See id*. ln 20-24).  The proof of prejudice "must be definite and not

9    speculative, and the defendant must demonstrate how the loss of a witness and/or

10   evidence is prejudicial to his case."  *Moran*, 759 F.2d at 782.  Defendant has offered

11   neither speculation nor proof of any possible evidence, alibi, testimony, or witnesses that

12   have been lost due to the delay.  He has merely claimed that the tactical advantages

13   enjoyed by the government as a result of the delay qualifies as actual prejudice.  (Doc.

14   215 at 8).

15   Speculation as to the strength of the opposition's case is not proof of actual

16   prejudice.  The alleged victims in counts 3-23 have yet to testify at trial.  Defendant

17   assumes their combined testimony is prejudicial to him.  While certainly conceivable, this

18   assumption by the Defendant is still "speculation, which cannot serve as grounds for a

19   finding of actual prejudice."  *United States v. Mays*, 549 F.2d 670, 680 (9th Cir. 1977).

20   Due to the Supreme Court's reluctance to replace the discretion of the prosecutor for its

21   own on when to file charges, *Lovasco*, 431 U.S. at 790, and the Supreme Court's

22   acknowledgment that some prejudice may result from the government waiting until its

23   case is stronger, *id*. at 796, it would be unwarranted for this Court to grant Defendant's

24   motion.  Therefore, any tactical advantage for the government created by the pre-

25   indictment delay, while likely prejudicial to Defendant's case, does not rise to the level of

26   actual prejudice for due process purposes as explained by the Supreme Court and the

27   Ninth Circuit.

28              **2.  Balance between the Delay and Reasons for the Delay**

1    The central issue before the Court under this second prong of determining a due

2    process violation is the reason for the delay.  If the delay was intentional, reckless or

3    negligent, it would strengthen Defendant's claim of a due process violation.  If, however,

4    the delay was investigative, the government's judgment on when to bring charges would

5    not violate Defendant's rights.  The Court finds the pre-indictment delay by the

6    government was investigative.

7    Under this second prong, to prove a due process violation a defendant in the Ninth

8    Circuit can show intention, recklessness, or negligence by the government in bringing a

9    delayed indictment.  If the government was reckless or intentionally delayed the

10   indictment, the length of the delay could be minimal to find a due process violation.  *See*

11   *Moran*, 759 F.2d at 782.  If the government was merely negligent "then obviously the

12   delay and/or prejudice suffered by the defendant will have to be greater than that in cases

13   where recklessness or intentional governmental conduct is alleged."  *Id.*  In *Lovasco* and

14   *Marion* the Supreme Court explained that delays taken solely to gain a tactical advantage

15   over a defendant would violate due process but investigative delays are fundamentally

16   different and do not deprive a defendant of due process, even if his defense is prejudiced

17   by the lapse of time.  431 U.S. at 795-796; 404 U.S. at 324.  A delay to gain a tactical

18   advantage over a defendant is one specifically taken in order to impair the defendant's

19   ability to mount an effective defense.  *Lovasco*, 431 U.S. at 795 n.17.

20   Assuming arguendo that Defendant had "established actual prejudice due to an

21   unusually lengthy government-caused pre-indictment delay, it then becomes incumbent

22   upon the government to provide the court with its reason for the delay."  *Mays*, 549 F.2d

23   at 678.  Defendant claims the government was negligent (and arguably reckless) in their

24   lack of investigation into Jane Does 2-9.  (Doc. 215 at 9).  The Court finds no evidence

25   that the delay was intentional on the government's part in order impair Defendant's

26   ability to defend himself.  Defendant himself admits that he has no evidence that leads

27   him to believe that the government intended to delay indictment in order to gain a tactical

28   advantage.  (Doc. 215 at 9).  In his Reply, Defendant argues that the delay in this case

1   was not an investigative delay because there was no continuing investigation for one

2   individual victim that caused the full delay.  (Doc. 278 at 2).  It appears that the pre-

3   indictment delay in this case was not due to the investigation into any one crime or

4   victim, but due to the development of propensity evidence in the form of multiple victims

5   that when all testifying together strengthen each other's cases.  While the Court

6   recognizes the inherent prejudice in this situation against Defendant, this evidence is still

7   admissible in each charge under Federal Rules of Evidence 413, 414, and 404(b).  The

8   investigation of each alleged victim did in fact strengthen the cases for the other victims.

9   The Court finds this is sufficient investigation on the part of the government to qualify as

10  an investigative delay.

11          Accordingly, the Court finds the pre-indictment delay was due to the

12  government's investigation into Defendant's alleged actions.  The government did not

13  have enough evidence, propensity or otherwise, to charge Defendant until its

14  investigation uncovered more victims whose cases strengthen each other's.  This delay

15  was a consequence of investigating Defendant's activities and not intentional by the

16  government to impair Defendant's ability to defend himself.  Therefore, the pre-

17  indictment delay by the government did not offend those fundamental conceptions of

18  justice which lie at the base of our civil and political institutions and did not violate

19  Defendant's due process rights.

20  **II.     DEFENDANT'S MOTION TO SEVER COUNTS (Doc. 223)**

21          The Court denies Defendant's Motion to Sever Counts because Defendant has not

22  shown that the counts were improperly joined nor has he shown that he will be prejudiced

23  by a single trial on all counts in the Second Superseding Indictment.

24          **A.     Background**

25          Defendant urges this Court to sever the twenty-three joined counts in the Second

26  Superseding Indictment under Federal Rules of Criminal Procedure 8(a) and 14(a).  (Doc.

27  223 at 1).  Defendant is charged by the government with twenty-three counts against nine

28

victims that occurred over a nineteen year period from 1992 until 2010.[2]  Defendant asks the Court to sever the counts so Defendant would face each victim individually in nine separate trials.  (*Id*. at 5).  According to Defendant, joinder was improper under Rule 8(a) because in the twenty-three counts "the evidence does not overlap" where it must and the counts are not "logically related."  (*Id*. at 6).  Further, even if joinder were proper under Rule 8(a), Defendant insists under Rule 14 that the Court should sever the charges into separate trials because together the charges prejudice Defendant.  (*Id*.)

The government contends the counts were properly joined under Rule 8(a) because they are all similar.  (Doc. 249 at 17).  Further, the government argues that the evidence related to each victim will be introduced in the trials of the other victims regardless of whether the counts are severed or not.  (*Id*. at 11).  Because the evidence of the other charges will be admissible, the government claims that Defendant has not shown any prejudice resulting from the joined counts which would necessitate severance under Rule 14.  (*Id*. at 12-13).

**B.    Discussion**

Rule 8(a) provides for joinder of offenses against a single defendant in the indictment if one of three conditions is satisfied.  The offenses charged must be: (1) "of the same or similar character;" (2) "based on the same act or transaction;" or (3) "connected with or constitut[ing] parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  If the government has met the standard of Rule 8(a) in the indictment,

> Rule 14 permits the district court to order separate trials of counts at its discretion if the joinder of offenses . . . in [the] indictment . . . appears to prejudice a defendant.  Thus, even if joinder is permissible under Rule 8, a party who feels

---

[2] Defendant claims the charged offenses occurred over a time period from 1981 through 2010.  (Doc. 223 at 1).  This Court, however, finds no evidence of such a time period.  According to Defendant's own schematic (Doc. 223 at 2-3) and the Second Superseding Indictment itself (Doc. 184), the earliest offense charged is Count 7 and occurred in 1992 and the latest offense charged is Counts 1 and 2, which occurred in 2010.

prejudiced by joinder may move to severe pursuant to Rule 14.

*United States v. Jawara*, 474 F. 3d 565, 572 (9th Cir. 2007) (citations omitted).

Thus, to determine whether to grant Defendant's motion to sever the Court must engage in two separate inquiries: (1) considering the indictment only, the Court must determine if the counts were properly joined in the first instance, and, if yes, (2) under this Court's discretion should the properly joined counts nonetheless be severed based on prejudice.

### 1. Joinder of Counts

As an initial matter the Court must determine whether the counts in the indictment were properly joined.  In determining whether joinder under Rule 8 is appropriate, the Court looks to only the indictment.  *Jawara*, 474 F. 3d at 572-573.  "At least one of Rule 8(a)'s three conditions must be satisfied for proper joinder, and those conditions, although phrased in general terms, are not infinitely elastic."  *Id*. at 573 (citations omitted).

In this case, the government in its Response invokes counts of the same or similar character as the basis for joinder.  (Doc. 249 at 15-16).  Defendant appears to argue briefly in his Motion that the charges do not meet the "common scheme or plan" condition because it is not enough that all the crimes involve the same alleged perpetrator.  (Doc. 223 at 6).  Defendant does not explicitly address in his Motion (Doc. 223) or in his Reply (Doc. 275) why his case does not meet the "same or similar character" condition that the government invoked in its Response.  The closest Defendant comes to arguing why his indictment does not meet the "similarity" condition is when he explains how the Ninth Circuit quoted commentators that were weary of this condition in *Jawara*.  (Doc. 223 at 4).  Explaining the legal standard without arguing why the facts of the case at bar meet or do not meet that standard is not enough.  In fact, Defendant admits the similarity of the charges against him in the indictment.  (*Id*. at 6 ("The charges are all child sexual abuse counts")).  Aside from repeated conclusory statements, Defendant's

Motion and Reply appear to focus solely on the prejudice suffered by Defendant if the counts are not severed.  Defendant does not sufficiently explain how the counts were improperly joined.  Any prejudice at issue would be properly addressed under a Rule 14 analysis by the Court.  Thus, the question for the Court is under the indictment alone has the government shown that the joined counts in this case meet the same or similar condition.

The Ninth Circuit in *Jawara* explicitly stated "where the government seeks joinder of counts on the basis of 'same or similar character,' it crafts a barebones indictment at its own risk."  474 F.3d at 578.  The *Jawara* court endeavored to "fill in some of the blanks" in "assessing the propriety of joinder on the basis of [the] "same or similar character" condition of Rule 8(a).  *Id.* at 576.  In determining whether counts in an indictment have been properly joined due to same or similar character the Ninth Circuit considered it appropriate to consider a non-exclusive list of various factors.  *Id.* at 578.  These factors include elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims.  *Id.*  "The weight given to a particular factor will depend on the specific context of the case and the allegations in the indictment.  But the bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment."  *Id.*  Given this roadmap the Court compares each of these factors to the face of the Second Superseding Indictment.

### a. Elements of the statutory offenses

The government charged Defendant with multiple counts of five different offenses.  (1)  Aggravated sexual abuse with children (18 U.S.C. § 2241(c)) in counts 1, 2, 3, 4, 5, 10, 12, 13 and 15; (2)  Abusive sexual contact involving young children (18 U.S.C. § 2244(a)1 and (c)) in counts 6 and 16; (3)  Aggravated sexual abuse by force or threat (18 U.S.C. § 2241(a)) in counts 7, 9, 11, 14, 17, 19, 20 and 22; (4)  Sexual abuse of a minor (18 U.S.C. § 2243(a)) in count 8; and (5)  Kidnapping (18 U.S.C. § 1201(a)) in

counts 18, 21, and 23.  With the exception of kidnapping all of the offenses are sexual offenses with the same or similar elements.  For the only victim that Defendant is accused of committing a different crime against (three counts of kidnapping against Jane Doe 9) he is also accused of committing the same four counts of sexual offenses that he is accused of committing against other victims.  Thus, the Court finds the elements of the offenses similar enough to justify joinder in the indictment.

### b.  Temporal Proximity of the Acts

Defendant contends the offenses spanned thirty-one years.  (Doc. 223 at 6).  While the Court points out the offenses in the indictment were spread over a period of nineteen years as explained above, the Court acknowledges this is still too long of a time period to find this factor in favor of joinder.

### c.  Evidentiary Overlap

The government argues that all of the alleged victims should be allowed to testify at each of the trials against Defendant under Federal Rules of Evidence 413, 414, and 404(b).  (Doc. 249 at 14).  The Court agrees that due to the rules cited by the government there will be sufficient evidentiary overlap to justify joinder under this factor.

### d.  Location of the Acts

The government gives no more specific location information in the indictment than that each charge occurred within the confines of the Fort Apache Indian Reservation.  (Doc. 184).  Defendant does not argue that this is not enough to justify joinder.  This Court, however, does not find the indictment specific enough as to location to justify joinder.  The Fort Apache Indian Reservation comprises approximately 2,627 square miles.  *See* U.S. Census Bureau, American Fact Finder (Oct. 10, 2012), www.factfinder2.census.gov.  This is not a narrow enough location reference to justify joinder of counts with the same or similar character.

### e.  Modus Operandi

The indictment does not specify a unique modus operandi with respect to the crimes.  The only commonality is the similarity of the crimes charged, in that they are all

- 14 -

analogous sexual offenses as discussed above, and most of the charges involve minors. The government argues that the modus operandi for the offenses was often the same and lists some similar factors. (Doc. 249 at 17). But the government makes this argument in their Response, not their indictment. As discussed above, the government crafts a barebones indictment at its own risk and few of the facts supporting a modus operandi alleged in the Response were in the indictment. Accordingly, the Court finds this factor does not favor the government and joinder of the charges.

### f. Identity of the victims

Under the indictment, six of the nine victims (Jane Does 1, 2, 3, 5, 7, and 8) were under the age of eighteen and no less than four years younger than Defendant when the alleged offenses occurred. There is no age given for Jane Does 4 (count 9), 6 (count 11), and 9 (counts 17-23). If the crimes were not of such similarity this factor would not justify joinder, however, because a vast majority of the girls are minors according to the indictment this factor does not bar joinder of the charges.

The similarity of the twenty-three crimes allegedly committed against such equivalent victims with overlapping evidence in each count weighs in favor of joinder under Rule 8(a). Accordingly, the Court finds more than thematic connection between the charges and enough similarity to justify joinder under the factors laid out in *Jawara*.

### 2. Severance

Next the Court must consider whether, even though joinder was proper, is severance still appropriate due to prejudice to Defendant. Rule 14 recognizes that even when counts are properly joined under Rule 8, severance of the counts may be appropriate to avert prejudice to a defendant.

> Rule 14 sets a high standard for a showing of prejudice. The party seeking reversal of the denial of a motion to sever bears the burden of proving such clear, manifest, or undue prejudice from the joint trial, that [it] violates one of his substantive rights, so that the prejudice is of such a magnitude that the defendant was denied a fair trial.

*United States v. Vasquez-Valsco*, 15 F.3d 833, 845-46 (9th Cir. 1994) (citations omitted); *see also United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005) (Rule 14 "contemplates that joinder under Rule 8(a) can be proper and, at the same time, severance can be required. Such cases, however, will be rare. It is not enough for the defendant to show that severance offers him a better chance of acquittal.") (citation omitted). "The defendant must show that [joinder is] so manifestly prejudicial that it overcomes the dominant concern with judicial economy." *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987) (citation omitted).

In this case, Defendant alleges prejudice because the "individual evidence is largely untimely allegations of child sexual abuse." (Doc. 223 at 6). Defendant argues that given the emotionally charged nature of the allegations and the number of offenses and victims, any jury will be overwhelmingly prejudiced when the allegations are taken together even though evidence of each individual charge is weak. (*Id.*) He contends when the testimony of multiple alleged victims is combined at a single trial the jury will be more likely to conclude "if he did it before, he will do it again," whether he did it before or not. (*Id.*) The Court does not find Defendant's argument persuasive. This argument by Defendant does not explain how he is any less prejudiced by nine different trials where the evidence of each alleged victim is still admissible in every other victim's trial, than by a single trial where all of the evidence is admissible. The Ninth Circuit recognized this very point and held "[i]f all of the evidence of the separate count would be admissible upon severance, prejudice is not heighted by joinder. A trial court does not abuse its discretion in denying severance under Rule 14 under such circumstances." *Johnson*, 820 F.2d at 1070. All of the evidence that Defendant claims is prejudicial will be admissible even in severed trials under the Federal Rules of Evidence 413, 414, and 404(b). Thus, joining the counts in a single indictment does not prejudice Defendant enough to justify severing the counts into nine separate trials. The Court therefore concludes that Defendant has not made the requisite showing of manifest prejudice resulting from the joined counts to justify granting his motion.

**III.    DEFENDANT'S SECOND MOTION TO EXCLUDE EVIDENCE (Doc. 225)**

The Court denies Defendant's Second Motion to Exclude Evidence because the evidence of prior sexual acts against children that the government proposes admitting is both relevant and does not overly prejudice Defendant.

**A.    Background**

In addition to the charges explained in the Second Superseding Indictment the government has given formal notice of intent to introduce other evidence of prior sexual acts with children, pursuant to Federal Rules of Evidence 413 and 414.  (Doc. 263 at 3 and 7).  This evidence of prior acts consists of the testimony of seven witnesses who will allege they were victims of and witnesses to similar prior acts of sexual assault and child molestation by Defendant.  (Doc. 122 at 8-10; Doc. 225 at 3,6; Doc. 263 at 4-5). Defendant asks the Court to apply the balancing test of Federal Rule of Evidence 403 and exclude the admission this evidence.  (*Id*.)

**B.    Discussion**

As an initial matter, the seven prior act witnesses appear to not all be testifying about prior sexual acts with children.  The government claims four of the seven prior act witnesses will allege they were victims of uncharged sexual assault and child molestation by Defendant and testify about these other acts by Defendant.  (Doc. 122 at 8-10).  For the other three witnesses at issue, the government claims: (1) one witness will testify to observing Defendant sexually assault one of the four witnesses testifying about an uncharged prior sexual act, thus corroborating that witness' testimony; (2) one witness will testify to observing Defendant bring home drunken young girls and engage in sexual acts with them (none of the young girls observed by this witness appear to be alleged victims or witnesses in this case); and (3) one witness will testify to observing Defendant throw the drinking parties that some of the victims in the indictment were sexually abused at.  (Doc. 263 at 4-5).  This last witness, testifying about the drinking parties, is not offering evidence of uncharged prior acts.  This witness' testimony is not at issue under Rule 413 and 414 because it has nothing to do with prior acts of sexual abuse or

prior acts of child molestation, this testimony is directly relevant to the charges in the indictment.  Thus, the Court finds this witness should not be included in this analysis of whether prior acts should be admitted under Rule 413 and 414.  As a result, only six of the witnesses will be testifying about prior sexual acts and child molestation and are at issue here.

The Court now addresses the admissibility of the evidence offered by these six witnesses.  Federal Rules of Evidence 413 and 414 allow evidence of prior uncharged sex acts and child molestation to be admitted against a defendant in a criminal trial for sexual assault and child molestation respectively.  Defendant recognizes that Rule 413 mirrors Rule 414 and the same principals should be applied to each.  (Doc. 94 at 8).  The Ninth Circuit stated "[t]here is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414.  As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."  *Lemay*, 260 F.3d at 1026.  Under Rule 403, district judges retain the discretion to exclude evidence that is far more prejudicial than probative.  *Id*.  Exclusion of relevant evidence pursuant to 403 is an "extraordinary remedy to be used sparingly."  *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995).  "Under the terms of this rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it."  *Id*.  Thus, in order to determine the admissibility of the prior acts evidence in this case the Court must initially decide if the evidence is relevant, then, if it is, decide if the evidence's potential for prejudice substantially outweighs the evidence's relevance.

### 1. Relevance

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.  "Similar act evidence is relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor.  This reliability threshold is not a high one, and the testimony of a single witness can be

1   sufficient." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (citations

2   omitted).

3         The Court finds the evidence at issue here meets the definition of relevance under

4   Rule 401.  Each witness' testimony would be propensity evidence under Rules 413 and

5   414 and make the charges against Defendant more probable than they would be without

6   this evidence.  The testimonies are also of consequence in determining whether

7   Defendant is guilty of the charges against him.  Further, the Court finds a jury could

8   reasonably conclude that the acts alleged by these six witnesses occurred and there is no

9   question raised that the six witnesses will identify Defendant as the actor.  Thus, the

10   Court finds the testimony of the six prior acts witnesses relevant.

11         **2. Does Prejudice Substantially Outweigh Relevance**

12         "Once relevance is established, the district court should admit the evidence unless

13   its prejudicial impact substantially outweighs its probative value." *Johnson*, 132 F.3d at

14   1282.  Due to "the inherent strength of the evidence that is admissible under Rule 414,

15   when putting this type of evidence through the Rule 403 microscope, a court should pay

16   careful attention to both the significant probative value and the strong prejudicial

17   qualities of that evidence." *Lemay*, 260 F.3d at 1027 (citations omitted).  The Court must

18   evaluate several factors to determine whether any prejudice outweighs the relevance of

19   prior acts. *Id.* at 1027-1028.  The factors the Court must consider include but are not

20   limited to: (1) the similarity of the prior acts to the acts charged; (2) the closeness in time

21   of the prior acts to the acts charged; (3) the frequency of the prior acts; (4) the presence or

22   lack of intervening circumstances; and (5) the necessity of the evidence beyond the

23   testimonies already offered at trial. *Id.* at 1028.  Concerning any prior acts, a defendant

24   does not have to have been tried and found guilty of the prior acts of molestation and

25   sexual assault for evidence of the acts to be admissible. *Id.* at 1029.  The Court now

26   compares the prior acts to each element.

27         **a. Similarity of Prior Acts**

28         The prior acts at issue are all substantially similar to the twenty-three charges

against Defendant.  Defendant is charged with multiple counts of aggravated sexual abuse with children, abusive sexual contact involving young children, aggravated sexual abuse by force or threat, and sexual abuse of a minor.  The government says these are the same offenses that four of the six witnesses will testify Defendant did to them.  All four witnesses were minors when the government says they will testify they were assaulted. Further, the other two witnesses will testify to observing Defendant engage in sexual acts with minors.  Defendant has made no claim that the other acts the witnesses will testify to are not similar to the acts Defendant is charged with.  Thus, this factor weighs in favor of admissibility.

### b.  Closeness in Time

The prior acts occurred close enough together to warrant finding that any prejudice does not outweigh the relevance of the prior acts.  The prior acts the six witnesses will testify to are no more than ten to eleven years prior to the acts Defendant is charged with. According to Defendant's own chart, the earliest prior act one of the witnesses at issue will testify to occurred between 1981 and 1982.  (Doc. 225 at 3).  The earliest offense Defendant is charged with allegedly occurred in 1992.  (Doc. 184 at 5).  The court in *Lemay* said "[w]e have held . . . that the laps of twelve years does not render the decision to admit relevant evidence of similar prior acts an abuse of discretion."  260 F.3d at 1029. The rest of the alleged prior acts occurred during the same period as the acts charged. Thus, this Court finds this factor in favor of admissibility.

### c.  Frequency of Prior Acts

The prior acts occurred with such frequency that the Court finds no prejudice in admitting evidence of them.  Again, according to Defendant's own chart the prior acts occurred in 1981-1982, 1991, 1991-1992, and 1999.  (Doc. 225 at 3).  This is compared to the charges in the indictment that allegedly occurred in 1992, 1993, 1994, 1995, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2009, and 2010.  The Court finds this factor also weighs in favor of admissibility.

### d.  Intervening Circumstances

This factor seems to have little relevance in this case and does not weigh in favor of either party.

### e.  Necessity of the Evidence

There is no indication at this time that the prior acts are necessary, nor is there any indication they are unnecessary.  Admitting the prior acts does not make any resulting prejudice outweigh their relevance.  "Prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*."  *Lemay*, 260 F.3d at 1029.  The government makes a compelling argument that the evidence provided by these six witnesses individually corroborates the allegations of the charged victims.  (Doc. 263 at 13).  Congress recognized this exact need for corroborating evidence in child molestation cases as the impetus for Rule 414. *Id*. at 1028 (quoting the Congressional Record, "child molestation cases 'require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration.'").  Because of the need for corroborating evidence to prove the government's case, the Court finds this factor also weighs in favor of admissibility.

In evaluating whether to admit evidence of prior sexual acts against children committed by Defendant, the Court finds that almost all of the factors delineated by the Ninth Circuit favor the government's position.  Thus, the Court finds that the probative value of this evidence is not outweighed by any prejudice suffered by Defendant.  Therefore, because the prior acts are relevant and not overly prejudicial, Defendant's Second Motion to Exclude Evidence is denied.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss Counts 3-23 (Doc. 215) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Sever Counts (Doc. 223) is denied.

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Exclude

Evidence (Doc. 225) is denied.

**IT IS FURTHER ORDERED** that because Defendant's Notice of Intention to Offer Evidence Under Rule 412(b) (Doc. 315) was filed after the deadline for filing Motions in Limine had passed, the government is granted leave to, and shall, file within seven days of this Order a supplement to their Motion in Limine Regarding Fed. R. Evid. 412 (Doc. 294) addressing the two exceptions under 412(b) that Defendant discussed in his Notice.

**IT IS FINALLY ORDERED** that the Court has issued this Order under seal out of an abundance of caution because the Motions were filed under seal.  However, the Court does not believe this Order needs to be sealed.  Thus, within ten days of this Order the government shall either move to unseal this Order or file a motion to maintain it under seal stating the reasons why the Order should be sealed.

Dated this 11th day of October, 2012.


James A. Teilborg
United States District Judge


**COPIES TO ONLY**

Counsel for the government and Counsel for Defendant